BEN BRAWLEY v. THE STATE.

No. 13650. Delivered November 12, 1930.
Rehearing Denied January 7, 1931.

The opinion states the case.

*L. E. Keeney* and *N. L. Dalby,* both of Texarkana, for appellant.

On the proposition that the charge erroneously submitted the issue as to whether appellant acted with another in the perpetration of the offense, appellant's attorneys cited the following: Bowen v. State, 47 Texas Crim. Rep., 147, 82 S. W., 520; Deneaner v. State, 58 Texas Crim. Rep., 624, 127 S. W., 203.

That the charge was on the weight of the evidence are cited the following: Milligan v. State, 22 S. W., 414; Bollen v. State, 48 Texas Crim. Rep., 745, 86 S. W., 1025.

On the sufficiency of the evidence are cited the following: Hogan v. State, 13 Texas Crim. App., 319; Irvine v. State, 13 Texas Crim. App., 501; Gables v. State, 68 S. W., 289; Wilson v. State, 100 S. W., 153.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for cattle theft; punishment, three years in the penitentiary.

We find in the record in this case two bills of exception, one complaining because the court refused a peremptory instruction to the jury to acquit, and the other to language used by the court in charging the jury upon circumstantial evidence. That part of the charge excepted to told the jury that before they could convict they must believe beyond a reasonable doubt that the accused alone, or that the accused and Sam Mooneyham and no other person or persons committed the offense charged.

We regard the part of the charge excepted to as capable of no possible injury to the accused, but on the contrary are of opinion that same was favorable to him. It limited the jury's right to convict to their belief beyond a reasonable doubt that appellant alone, or the appellant and one other particular person, committed the theft in question. Had the jury believed that appellant and some other person other than Mooneyham had stolen the animal in question, they could not have convicted under this charge.

We think the court correctly refused the appellant's request for a peremptory charge instructing a verdict in his favor.

Appellant vigorously assails the sufficiency of the testimony. The facts show that Mr. Eaglebarger owned a bull four or five years old, and that same was killed on the night of the 18th of June, 1929. Witness found his bull and the hide in a cold storage house at Texarkana. The carcass weighed 644 pounds and the hide 97 pounds. Elton Rushing swore that on the morning of the 19th of June he found the carcass of a

red bull in the road near Jeff Fisher's house. The bull had been butchered, and looked like some one had lost or dropped it there. It was between car tracks in the road. Joe Rushing testified that about ten or eleven o'clock on the night of the 18th of June he heard a truck or motor vehicle of some kind passing along said road, and that it made a rattling noise such as a truck makes when it dumps. He said the motor of the truck stopped running, and in a short time he heard some one say: "Well, G—d d—n". He heard the truck start up pretty quick, and saw two people going down the road. A short distance from witness' house two roads crossed, one of which led to Sam Mooneyham's place. Mooneyham, who was a brother-in-law of appellant, lived about a mile or a mile and a quarter from witness. Sam Pickering testified that he helped skin the bull referred to by the other witnesses, and knew that it was Eaglebarger's bull. Witness and his brother skinned the bull, cleaned it up and put it into cold storage, and sold it and delivered the proceeds to Mr. Eaglebarger. The bull was brought to witness' place by Mr. Hefner. Mrs. Foster testified that the afternoon before the carcass of the dead bull was found in the road, she saw appellant in a truck going toward Sam Mooneyham's place about four o'clock in the afternoon. Mrs. Atchley testified that she saw appellant in a truck going toward Mooneyham's place about three o'clock the afternoon before the dead bull was found in the road. The truck had what was called a gravel bed on same. Mr. Burrows testified that he lived about a half or three quarters of a mile from Mooneyham, and on the afternoon before the dead bull was found in the road he saw appellant going in a truck down the road toward Mooneyham's house. The truck had a gravel bed on it. Witness was plowing near the road on which appellant was. This road led nowhere except to Mooneyham's place. Witness plowed near the road until about six-thirty that afternoon and was at no time more than 350 yards from the road. He saw no one come back up the road from Mooneyham's. He saw the dead bull the next morning. Mrs. Tom Smith testified that on the afternoon in question she saw appellant driving a truck with a gravel bed on it going toward Mooneyham's and saw no one come back up the road. Her daughter gave substantially the same testimony. Rogers testified that he heard of the finding of the body of the bull about sunup the morning after the night same was killed; that he lived about a quarter of a mile from where the bull was found dead, and knew whose it was, had been seeing it around for the last nine or ten days before it was killed. He said that the bull was in the middle of the road and that the tracks straddled him and went on down the road; that there were two sets of tracks, one going and the other coming, and that he trailed the tracks about half way down toward Sam Mooneyham's place and saw no other tracks leading down from Mooneyham's. He said it was impossible for there to be any other track. He further

said that the roads down there had been impassable previous to this time on account of the heavy rains. Aside from these two sets of tracks referred to by witness, he found no others, though he searched and looked to see if there were any. Deputy Sheriff Lindsay went over to where the bull lay in the road, and testified to the truck tracks, and said the bull appeared to have fallen out of the truck in the middle of the road. He said they tracked the truck to Sam Mooneyham's and found in the lot blood on the ground, right smart of blood, which looked as though some one had tried to rake it up and burn it and put hay over it. This witness further said there was a postoak tree in the lot that had a limb ten or twelve feet high, seeming to be about six inches in diameter; that the bloody ground was immediately under this limb; also that there was a sign on the limb mentioned as though a rope or something had been drawn over the limb, the bark being rubbed off. The place where this bark was rubbed off was almost directly over this blood on the ground. Witness observed where a truck had gone inside the lot. Judge Holley, justice of the peace, went to where the bull was found and testified that he observed the truck tracks, and found no others leading to where the bull was except the track which came from toward Sam Mooneyham's. This witness said he noticed some fresh hay under a tree in Mooneyham's lot and raked some of it back and found under it bloody dirt; also found a puddle of blood, and underneath the hay was a hoe which looked as though it had been used to rake the blood up. There was some fresh burned hay there. This witness also described the limb of the tree above the blood where there had been a pulley on the limb, the bark being freshly peeled off. He also said there were car tracks right to where the bloody spot was, which tracks he traced back to the road. That same day witness and a constable went out to appellant's place and looked at his truck. He said it had the same kind of casings on it as made the tracks they found at Mooneyham's and the same kind as were found in the road. Appelant's truck had a gravel bed on it, a dump bed, the kind of bed that works on a pivot, and could be used to dump its load. Witness observed in the bed of the truck and found blood in the back end, having the appearance as though something had slipped, and in this part of the truck there was dried blood, seeming to extend pretty well across the whole floor bottom of the truck. He said it had the appearance as though something bloody had slipped from it. This witness was also permitted to testify without objection that the bull lying in the road looked as though he had slipped out of the truck. He said that appellant's truck had the same kind of tires on it that made the tracks in the road where the bull was found, and witness could tell that it was the last truck that had been along that road since the dew had fallen the previous night. This is the substance of the State's testimony.

Appellant introduced a number of his relatives and other witnesses in an effort to overcome the State's case. Mrs. Mooneyham testified and said that the blood found in her husband's lot could be accounted for by the fact that a mule of her husband's got cut. In its rebuttal testimony the State showed this mule was cut in March preceding the killing of the bull in June. We are of opinion that there is enough testimony in this record which, if believed by the jury, would support the conclusion of appellant's guilt. This court has no authority to substitute its own judgment or views as to the weight of the testimony, for that of the jury, when there is in the record evidence reasonably indicating the guilt of the accused.

The judgment will be affirmed.

*Affirmed.*

Hawkins, J., absent.

ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In view of appellant's motion we have at his request carefully re-examined the statement of facts. If the evidence did not raise an issue that Sam Mooneyham acted with appellant in the theft of the animal then his contention that the charge complained of was erroneous would present a serious question. The evidence, if not misunderstood by us, does, we think, raise the issue authorizing the charge complained of.

The jury accepted the State's evidence as true. We cannot say it was insufficient to support the conviction.

The motion for rehearing is overruled.

*Overruled.*